# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

_____

| | |
|---|---|
| In Re:<br>**MICHAEL E. RINEHART,**<br>**and SHARON S. RINEHART,**<br><br>Debtors. | **Bankruptcy Case**<br>**11-41210-JDP** |

_____

| | |
|---|---|
| **MICHAEL E. RINEHART,**<br>**and SHARON S. RINEHART,**<br><br>Plaintiffs,<br><br>vs.<br><br>**FEDERAL NATIONAL**<br>**MORTGAGE ASSOCIATES;**<br>**SETERUS, INC.; FIRST**<br>**TENNESSEE BANK, NA d/b/a**<br>**FIRST HORIZON HOME**<br>**LOANS,**<br><br>Defendants. | **Adv. Proceeding**<br>**No. 11-08087-JDP** |

_____

## MEMORANDUM OF DECISION

_____

MEMORANDUM OF DECISION – 1

**Appearances:**

> Stephen A. Meikle, ADVANTAGE LEGAL SERVICES, Idaho Falls, Idaho, Attorney for Plaintiffs.

> Lauri E. Burri, RINGERT LAW, Boise, Idaho, Attorney for Defendants Federal National Mortgage Associates and Seterus, Inc.

### *Introduction*

In this adversary proceeding, Plaintiffs Michael and Sharon Rinehart have filed a Motion for Partial Summary Judgment.  Dkt. No. 28.  The Defendants,[1] Federal National Mortgage Associates ("Fannie Mae") and Seterus, Inc., have also filed a Motion for Summary Judgment.  Dkt. No. 37.  Affidavits and memoranda were filed, and both motions came on for hearing on June 19, 2012, at which time the Court heard oral argument.  Both parties were permitted to supplement their briefing, after which the motions were deemed under advisement.

Having considered the submissions of the parties, including

---

[1] First Tennessee Bank, NA, and First Horizon Home Loans were also originally listed as Defendants in this adversary proceeding.  On June 1, 2012, Plaintiffs stipulated to dismiss First Tennessee Bank and First Horizon Home Loans, which stipulation is currently pending.  Dkt. No. 47.

MEMORANDUM OF DECISION – 2

affidavits, the arguments of counsel, as well as the applicable law, this

Memorandum disposes of both motions.  Fed. R. Bankr. P. 7052; 9014.[2]

### *Facts*

On June 22, 2007, Plaintiffs borrowed $147,260 from First Horizon

Home Loans ("First Horizon"), a division of First Tennessee Bank N.A.

("First Tenn.").  Dkt. No. 29, ¶ 2.  They used the funds to purchase a home

in Idaho Falls.  *Id*.  Plaintiffs signed a promissory note in which they

promised to repay the loan to First Tenn. ("Note").  Dkt. No. 29, Exh. 1.

Plaintiffs also signed a Deed of Trust ("DOT") to secure the Note.  Dkt.

No. 33, Exh. 2.  In the DOT, Plaintiffs are listed as the "Borrowers;" the

"Lender" is First Horizon, as a division of First Tenn.; the "Trustee" is

First American; and the "Beneficiary" is Mortgage Electronic Registration

Systems, Inc. ("MERS").  *Id*.  In particular, MERS is named as the

beneficiary "*solely as nominee* for Lender and Lender's successors and

---

[2]  Unless otherwise indicated, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, all rule references are to the Federal
Rules of Bankruptcy Procedure, Rules 1001 – 9037, and all "Civil Rule" references
are to the Federal Rules of Civil Procedure.

MEMORANDUM OF DECISION – 3

assigns." *Id*. (emphasis in original).   In describing MERS' powers, the

DOT provides that:

> Borrower understands and agrees that MERS
> holds only legal title to the interests granted by
> Borrower in this Security Instrument, but, if
> necessary to comply with law or custom, MERS
> (as nominee for Lender and Lender's successors
> and assigns) has the right:  to exercise any or all
> of those interests, including but not limited to,
> the right to foreclosure and sell the Property; and
> to take any action required of Lender including,
> but not limited to, releasing and canceling this
> Security Instrument."

*Id*.

The DOT was recorded in Bonneville County on June 25, 2007,

Instrument No. 1267790.  *Id*.  On July 11, 2008, a document was executed

by an agent of MERS in which "all beneficial interest" under the DOT was

assigned from MERS to First Horizon.  Dkt. No. 33, Exh. 3.  This first

assignment was recorded in Bonneville County on July 17, 2008.  *Id*.  In a

document recorded at the same time,[3] First Horizon named Alliance Title

---

[3]  Interestingly, the Appointment of Successor Trustee was dated July 11, 2008, but the notarization date is July 9, 2008.

MEMORANDUM OF DECISION – 4

& Escrow ("Alliance") as the successor trustee of the DOT.[4]  *Id.*, at Exh. 4.

On July 1, 2008, First Horizon, as successor beneficiary, signed and

sent a Notice of Default to Plaintiffs.  Dkt. No. 33, Exh. 5.  This notice was

subsequently rescinded on August 15, 2008, Dkt. No. 33, Exh. 6.  On

January 6, 2010, MERS executed an Assignment of Deed of Trust to

MetLife Bank, N.A. ("MetLife").  Dkt. No. 33, Exh. 7.  This second

assignment likewise purported to assign "all beneficial interest" under the

DOT, and was recorded in Bonneville County on February 3, 2010.  *Id*.  On

January 6, 2010, MetLife executed an Appointment of Successor Trustee,

and named Transnation Title & Escrow ("Transnation") as the successor

trustee under the DOT.  Dkt. No. 33, Exh. 8.

On February 1, 2010, Transnation executed and sent Plaintiffs a

Notice of Default and Election to Sell Under Deed of Trust; it was

---

[4]  It appears that on August 16, 2007, Plaintiffs signed a second note in the
amount of $17,276.01, and a second deed of trust to secure the second note
encumbering the same property.  Dkt. No. 33, Exh. 14.  The Court does not have
this note in the record before it, however the second trust deed names Plaintiffs
as borrowers, First American as trustee, and Citifinancial, Inc., as the beneficiary.
*Id*.  The deed of trust was recorded on August 23, 2007.  *Id*.  This second note and
deed of trust are not implicated in this adversary proceeding.

MEMORANDUM OF DECISION – 5

recorded on February 3, 2010.  Dkt. No. 33, Exh. 9.  This notice of default

was also rescinded, this time on June 16, 2010.  Dkt. No. 33, Exh. 10.

On February 23, 2011, MetLife executed an Assignment of Deed of

Trust to Fannie Mae.  Dkt. No. 33, Exh. 11.  The document assigns "all

rights, titles, and interest in or to accrue under" the DOT.  *Id*.  This third

assignment was recorded on March 15, 2011, and provides that the

effective date of the assignment is May 1, 2010.  The unusual effective date

may be explained by the fact that Fannie Mae appointed a successor

trustee, again naming Transnation as trustee.  Dkt. No. 33, Exh. 12.

However, Fannie Mae's appointment of Transnation as successor trustee

was executed on December 30, 2010, and notarized on January 6, 2011,

prior to the date of the Third Assignment.  *Id*.

On March 18, 2011, Transnation executed and sent a Notice of

Default and Election to Sell under Deed of Trust to Plaintiffs; the notice set

the trustee's sale for July 25, 2011.  Dkt. No. 33, Exhs. 13-14.  On July 22,

2011, Plaintiffs filed a chapter 13 petition.  BK Dkt. No. 1.  On September 6,

2011, Fannie Mae filed a proof of claim in the bankruptcy case, which it

MEMORANDUM OF DECISION – 6

later amended as to the amount of the claim.  Claim Nos. 5-1, 5-3.

On October 10, 2011, Plaintiffs commenced this adversary proceeding with the filing of a Complaint.  Dkt. No. 1.  The Complaint alleges, *inter alia*, that Fannie Mae is not the proper holder or owner of the DOT.  Plaintiffs also contend in their Complaint that the DOT does not conform with the requirements of Idaho Code § 45-1502.  As such, Plaintiffs seek to have the DOT declared invalid and unenforceable to secure the Note.  Plaintiffs argue summary judgment is appropriate on that issue.

Defendants, on the other hand, contend that summary judgment should be granted in their favor on all aspects of Plaintiffs' Complaint.

### *Summary Judgment Standard*

This Court recently summarized the standard for resolving summary judgment motions:

> In adversary proceedings before the bankruptcy court, the familiar summary judgment standard established in Federal Rule of Civil Procedure 56 applies.  *See* Fed. R. Bankr. P. 7056; *North Slope Borough v. Rogstad (In re*

MEMORANDUM OF DECISION – 7

*Rogstad)*, 126 F.3d 1224, 1227 (9th Cir. 1997). Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact. *Id.* at 256-57, 106 S.Ct. 2505. The court must view all the evidence in the light most favorable to the nonmoving party. *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

In response to a properly submitted summary judgment motion, the burden shifts to the opposing party to set forth specific facts showing that there is a genuine issue for trial. *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1055-56 (9th Cir. 2002). The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

A court "generally cannot grant summary judgment based on its assessment of the

MEMORANDUM OF DECISION – 8

> credibility of the evidence presented." *Agosto v.
> INS*, 436 U.S. 748, 756, 98 S.Ct. 2081, 56 L.Ed.2d
> 677 (1978). "[A]t the summary judgment stage
> the judge's function is not himself to weigh the
> evidence and determine the truth of the matter
> but to determine whether there is a genuine issue
> for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct.
> 2505.

*Gugino v. Wells Fargo Bank Northwest, N.A. (In re Lifestyle Home Furnishing,*

*LLC)*, 10.1 IBCR 23, 23 (Bankr. D. Idaho 2010) *(quoting Barboza v. New Form,*

*Inc. (In re Barboza)*, 545 F.3d 702, 707 (9th Cir. 2008)).

When parties submit cross-motions for summary judgment, the

Court must review each cross-motion separately. *Fair Housing Council of*

*Riverside Cnty., Inc. v. The Inland Mediation Bd., Inc.*, 249 F.3d 1132, 1136

(9th Cir. 2001). Moreover, the mere filing of cross-motions, with both

parties asserting no uncontested issues of material fact, does not vitiate the

Court's responsibility to examine the record and determine whether

disputed issues of material fact are present. *Id.*

Here, the Court finds that the facts material to resolving the legal

issues presented by both motions are undisputed, and that neither party is

MEMORANDUM OF DECISION – 9

entitled to judgment as a matter of law.

### *Analysis and Disposition*

The Court will begin by considering the DOT and its various assignments, as all required formalities must be met before Defendants can assert a valid secured claim in Plaintiffs' bankruptcy case.

*A. Deficiencies in the DOT.*

Plaintiffs allege that the DOT is deficient under Idaho law. The crux of Plaintiffs' argument is that the DOT essentially designates MERS as both beneficiary and trustee, which Plaintiffs argue is prohibited by Idaho Code § 45-1502(1).

1.  Chain of Assignments.

Before the Court addresses that argument, however, a closer look at the chain of assignments executed by MERS is in order. The record includes an assignment of "all [MERS'] beneficial interest in [the DOT] to First Horizon" on July 11, 2008. Dkt. No. 33, Exh. 3. However, on January 6, 2010, MERS again transferred "all beneficial interest" under the same DOT to MetLife. What the record lacks is any assignment back to MERS

MEMORANDUM OF DECISION – 10

restoring its beneficial interests under the DOT prior to making the second

assignment to MetLife.   In other words, there is nothing in the record to

show that when MERS assigned all its beneficial interest in the DOT to

MetLife it actually held any interest to assign.  In the absence of such proof

in this record, as a matter of law, the Court concludes that the second

assignment to MERS is deficient.[5]

The Idaho Code provides:

> [w]here any transfer in trust of any estate in real
> property is hereafter made to secure the
> performance of [an obligation of the grantor], a
> power of sale is hereby conferred upon the
> trustee to be exercised after a breach of the
> obligation for which such transfer is security. . . ."

Idaho Code § 45-1503.  Moreover, Idaho Code § 45-1505 provides that

-----

[5] The Idaho Supreme Court has held that "a trustee may initiate
nonjudicial foreclosure proceedings on a deed of trust without first proving
ownership of the underlying note or demonstrating that the deed of trust
beneficiary has requested or authorized the trustee to initiate those proceedings."
*Trotter v. Bank of New York Mellon*, 275 P.3d 857, 862 (Idaho 2012).  However,
whether an entity must establish its standing prior to initiating nonjudicial
foreclosure proceedings, and whether the foreclosing trustee has the right to
submit a proof of claim in a bankruptcy case, when challenged by the debtor, are
different.  The Court concludes that, in this bankruptcy context, *Trotter* is not
dispositive.

MEMORANDUM OF DECISION – 11

"[t]he *trustee* may foreclose a trust deed"when certain conditions are met,

including, prior to foreclosure, that the "trust deed, any assignments of

the trust deed by the trustee or the beneficiary and any appointment of a

successor trustee [be] recorded in mortgage records in the counties in

which the property described in the deed is situated[.]"  Idaho Code § 45-

1505(1) (emphasis supplied); *Meyer v. Bank of America, N.A.*, 2001 WL

4584514 *2-3 (D. Idaho 2011) (citing *Roque v. SunTrust Mort., Inc.*, No.

C–09–00040 RMW, 2010 WL 546896, *3 (N.D. Cal. Feb.10, 2010) (observing

that "[t]rustees regularly foreclose on behalf of assignees for the original

beneficiary")).

Thus, under Idaho law, the trustee of a trust deed may initiate a

nonjudicial foreclosure when the borrower is in default, but only if all the

assignments of the deed of trust, and any appointment of successor

trustees are properly recorded.  By requiring that any assignments be

recorded prior to foreclosure, the Idaho Legislature highlights the

importance of a proper and transparent chain of title:  "The primary

purpose of the recording statutes is to give notice to others that an interest

MEMORANDUM OF DECISION – 12

is claimed in real property and thus give protection against bona fide

third parties who may be dealing in the same property." *Farm Bureau Fin.*

*Co., Inc. v. Carney*, 605 P.2d 509, 513 (Idaho 1980) (quoting *Matheson v.*

*Harris*, 572 P.2d 861, 864 (Idaho 1977)).  Idaho courts have required strict

compliance with Idaho's trust deed statute.  *See Security Pac. Fin. Corp. v.*

*Bishop*, 704 P.2d 357, 360 (Idaho App. 1985) (notice requirements not met

and trustee's sale held invalid).

When questioned about this anomaly during the motion hearing,

counsel for Fannie Mae and Seterus argued that MERS had expansive

powers and could essentially assign its interest in the DOT at will, and, so

long as there was an assignment to the foreclosing entity made and

recorded prior to the foreclosure in compliance with Idaho law, all was

well.  While the Court expressed some interest in this theory and

permitted supplemental briefing, counsel for the creditors chose not to

submit anything further to bolster this characterization of MERS'

expansive powers.  Perhaps Defendants have struck out in attempts to

locate judicial support for their proposition; the Court has located no case

MEMORANDUM OF DECISION – 13

law to support the argument on its own.

Because, looking at the property records, MERS seemingly had no beneficial interest in the DOT at the time it executed and recorded the assignment to MetLife, it presumably had no rights to assign. As a result, the chain of assignments concerning the DOT was corrupted, MetLife received no interest in it, and thus thereafter could not assign "all rights, titles, and interest in or to accrue under" the DOT to Fannie Mae on February 23, 2011. *See Lacey v. BAC Home Loans Servicing, LP (In re Lacey)*, ___ B.R. ___, 2012 WL 2872050 *18-19 (Bankr. D. Mass. July 12, 2012) (error in assignment excluded bank as named trustee; error was perpetuated through chain of assignments and court held that bank ultimately did not have foreclosure rights as trustee).

Moreover, upon receiving the assignment from MERS, First Horizon appointed Alliance as successor trustee. Accordingly, when Transnation sought to foreclose on behalf of Fannie Mae in March 2011, not only did Fannie Mae lack a recorded interest in the DOT, but it also lacked the authority to appoint Transnation as successor trustee, as its

MEMORANDUM OF DECISION – 14

authority could only be derived from Fannie Mae.  On this record, it

appears Defendant Fannie Mae holds no secured claim in Debtors'

bankruptcy case to enforce, and thus its summary judgment motion must

be denied.

    2.  MERS as Beneficiary and Trustee.

    Turning next to Plaintiffs' motion for summary judgment, Idaho

Code § 45-1503(1) provides that "a deed of trust executed in conformity

with [the Idaho trust deed act] may be foreclosed by advertisement and

sale in the manner provided" by the act, or through a judicial foreclosure,

whichever method the beneficiary chooses in the event of borrower

default.  Plaintiffs contend that the DOT was not executed in conformity

with the trust deed act, and thus not only is a non-judicial foreclosure not

an option, but the DOT itself is invalid.[6]

    Specifically, Plaintiffs argue that while the DOT names MERS as the

---

    [6]  Plaintiffs do not suggest that the Note is invalid or deficient in any way, and thus they concede they owe a debt to First Tenn./First Horizon.  In the adversary proceeding, the issues focus solely on the Defendants' right to assert a secured claim arising from the DOT.

MEMORANDUM OF DECISION – 15

beneficiary, the power given to MERS also renders it a trustee, according
to the definition of trustee in the Idaho Code.  Pursuant to Idaho Code
§ 45-1502(4), "Trustee" is defined as "a person to whom the legal title to
real property is conveyed by trust deed, or his successor in interest."

As noted above, the terms of the DOT provide that:

> Borrower understands and agrees that MERS
> holds only legal title to the interests granted by
> Borrower in this Security Instrument, but, if
> necessary to comply with law or custom, MERS
> (as nominee for Lender and Lender's successors
> and assigns), has the right to exercise any or all of
> those interests, including, but not limited to, the
> right to foreclosure and sell the Property[.]

Dkt. No. 33, Exh. 2.

Based upon this statutory language, Plaintiffs argue that the DOT
purports to transfer legal title to their home to MERS, thus making MERS
both beneficiary and trustee.  However, under Idaho's trust deed act, a
beneficiary is "the person named or otherwise designated in a trust deed
as the person for whose benefit a trust deed is given, or his successor in
interest, *and who shall not be the trustee*."  Idaho Code § 45-1502(1)

MEMORANDUM OF DECISION – 16

(emphasis supplied).  As such, Plaintiffs contend that the DOT does not conform to Idaho law, and is invalid and unenforceable.  The Court disagrees with Plaintiffs for three reasons.

The first and most obvious reason is that the text of the DOT specifically names First American as trustee.  As such, it would be a tortured construction of the instrument to infer that some other party was the trustee.  Second, MERS is granted legal title only within the context of "the interests granted by Borrower in this Security Instrument," and holds the power to foreclose and sale Plaintiffs' property only "if necessary to comply with law or custom."  In other words, the DOT does not convey legal title to MERS in the general sense.

Finally, Plaintiffs have cited no cases, nor has the Court located any on its own, holding that the above-quoted language in the DOT converts MERS' designation to that of a trustee, despite the fact that this same DOT language has apparently been employed in thousands of transactions for years nationwide.  Indeed, Plaintiffs cite a Bonneville County District Court decision, *Belnap v. Pioneer Lender Trustee Services, LLC*, CV-2009-7082

MEMORANDUM OF DECISION – 17

(2010), in which the court concluded that a deed of trust, identical in

substance to the one at issue here, was ambiguous with regard to whether

MERS was a trustee or beneficiary, and deemed it a question of fact

unsuitable for resolution on summary judgment.

While decisions concerning MERS are all over the map nationwide,

there is authority from Idaho courts, both state and federal, holding that

MERS is a beneficiary with authority to assign its beneficial interest in a

deed of trust.  *See, e.g., Sykes v. Mortg. Elec. Registration Sys.*, 2012 WL

914922 *3 (D. Idaho Mar. 15, 2012); *Hobson v. Wells Fargo Bank, N.A.*, 2012

WL 505917 *4-5 (D. Idaho Feb. 15, 2012); *Edwards v. Mortg. Elec.

Registration Sys.*, Case No. CV-10-2745 (Kootenai County D. Ct., Nov. 6,

2010); *Trotter v. Bank of New York Mellon*, Case No. CV-10-95 (Kootenai

County D. Ct., July 2, 2010), *aff'd on other grounds*, 275 P.3d 857 (Idaho

2012).   The Court finds no reason to divert from this authority;

accordingly, the Court denies summary judgment to Plaintiffs on their

claims that MERS is both beneficiary and trustee under the DOT, and thus

can not be the beneficiary by virtue of Idaho statute.

MEMORANDUM OF DECISION – 18

3.  MERS' Agency Status.

Next, Plaintiffs argue that MERS is acting as agent for First Tenn., and as such, its agency status must be in writing in order to conform to Idaho Code § 9-505, which provides that in an agreement for the sale or lease of real property for a period longer than one year, if the agreement is made by an agent, the agreement is invalid "unless the authority of the agent be in writing, subscribed by the party sought to be charged."  Here, Plaintiffs contend that because Defendants have not disclosed the relationship between First Tenn./First Horizon and MERS, then MERS' agency status is not in writing and thus violates Idaho Code § 9-505.  The Court disagrees.

The DOT itself provides the legal basis for the parties' relationship.  It specifically names MERS as beneficiary, and further provides the extent of MERS' powers.  Plaintiffs seem to believe that some other document is necessary to accomplish this task; that MERS must have been granted "agent" status prior to the execution of the DOT, and absent a showing of the existence of such a document, the DOT is invalid.  However, Plaintiffs

MEMORANDUM OF DECISION – 19

overlook the fact that agency status was conferred in the DOT.  *See, In re Cedano*, 470 B.R. 522 (9th Cir. BAP 2012) ("As the beneficial nominee for the original lender and the lender's successors and assigns, MERS was an authorized agent of the lender."); *Sykes*, 2012 WL 914922 at *3 ("the Deed of Trust clearly intends that MERS act as the agent of the Lender, or its assigns, in administering the deed of trust, that it holds 'legal title,' and therefore has the authority to do so."); *Hobson*, 2012 WL 505917 at *6-7 (As the nominee, MERS acts as the agent of the lender).  Thus, while MERS' agency status must be in writing, the DOT can serve as the document which satisfies that requirement.

B.  *The Parties' Miscellaneous Arguments.*

    1.  "Show Me the Note".

    Plaintiffs apparently contend that Defendants have not satisfied the Idaho Uniform Commercial Code's requirement that the holder of an instrument demanding payment must exhibit the instrument upon demand by the debtor prior to payment.  Idaho Code §§ 28-3-501(1), (2)(b). The difficulty with Plaintiffs' argument is that there is no evidence before

MEMORANDUM OF DECISION – 20

the Court that Plaintiffs ever made any such demand upon Defendants,

and thus Defendants' duty to exhibit the instrument may have never

arisen.  It is Plaintiffs' burden on their summary judgment motion to

demonstrate that their demands went unheeded, and the Court has no

evidence of any such action in the record before it.  As a result, Plaintiffs

have shown no basis for a grant of summary judgment.

2.  No Value Given.

Second, Plaintiffs argue that because MERS did not "give value" as

part of the loan transaction, MERS cannot serve as beneficiary under

Idaho Code § 28-9-203.  Pursuant to that provision, a security interest

attaches to collateral and becomes enforceable against the debtor and third

parties when "(1) value has been given; (2) the debtor has rights in the

collateral or the power to transfer rights in the collateral to a secured

party; and (3) [one of four conditions regarding possession and control of

the collateral is met, none of which are at issue here.]"  Idaho Code § 28-9-

203(b).

The purpose of Idaho Code § 28-9-203 is to define when a security

MEMORANDUM OF DECISION – 21

interest has been created, or arises.  Idaho courts have reiterated that no

magic words are necessary, rather that the parties' intent, *i.e.,* whether the

transaction is intended to have effect as security, is the principal test.

*Simplot v. William C. Owens, M.D., P.A.*, 805 P.2d 449, 451 (Idaho 1990)

(quoting *Matter of Miller*, 545 F.2d 916, 918 (5th Cir. 1977)); *In re Owen*, 349

B.R. 66, 70 (Bankr. D. Idaho 2006) (Idaho courts take a liberal view

concerning the elements required to create an enforceable security

agreement).

Here, it is clear that Plaintiffs and Defendants intended that a

security interest in Plaintiffs' house be created to secure their repayment

of the loan.  Moreover, while MERS has acted as nominee or agent for the

lender, it has not sought to enforce the security agreement created by the

DOT.  Finally, value was obviously given in the original transaction (*i.e.,*

the loan) and Plaintiffs offer no authority requiring that MERS must have

independently given value to act as nominee for the lender, and

beneficiary under the DOT.  The Court concludes that the DOT created a

security agreement in this case.

MEMORANDUM OF DECISION – 22

3.  Quasi-Estoppel.

Lastly, Defendants assert that the doctrine of quasi-estoppel

prohibits Plaintiffs from complaining about MERS' participation in the

DOT.  Defendants contend that because Plaintiffs executed the DOT which

specifically gave MERS the authority to act as nominee, Plaintiffs are now

estopped from claiming that MERS lacks such authority in accordance

with the terms of the DOT.

It is important to note that Defendants raise the doctrine of *quasi-*

estoppel, rather than equitable estoppel.  Quasi-estoppel "applies where it

would be unconscionable to allow a person to maintain a position

inconsistent with one in which he acquiesced or of which he accepted a

benefit." *Garner v. Bartschi*, 80 P.3d 1031, 1038 (Idaho 2003) (quoting

*Eastern Idaho Agric. Credit Ass'n v. Neibaur*, 987 P.2d 314, 322 (Idaho 1999)).

To prevail on a theory of quasi-estoppel, the claimant must show:

> (1) the offending party took a different position
> than his or her original position, and (2) either (a)
> the offending party gained an advantage or
> caused a disadvantage to the other party; (b) the
> other party was induced to change positions; or

MEMORANDUM OF DECISION – 23

> (c) it would be unconscionable to permit the offending party to maintain an inconsistent position from one he or she has already derived a benefit or acquiesced in.

*Mortensen v. Stewart Title Guar. Co.*, 235 P.3d 387, 394 (Idaho 2010) (quoting *Terrazas v. Blaine County*, 207 P.3d 169, 176 n.3 (Idaho 2009)).  Plaintiffs contend that because mortgages are creatures of law, not equity, the doctrine of equitable estoppel can not apply in this case.

However, the Court concludes, as a matter of law, that Defendants' quasi-estoppel argument is of no moment, as the Court has denied summary judgment to Plaintiffs on each of their claims attacking the sufficiency of the DOT.  That the Court has found the chain of assignments problematic is a legal issue, and not one that can be addressed in equity.  Moreover, the defect in Defendants' chain of assignments is not something about which Plaintiffs had previously taken a position.  The fact that Plaintiffs have paid all payments according to the Note and lived in the home for some years is not a position inconsistent with an attack on the legal sufficiency of the DOT.  In order to non-judicially foreclose, Idaho

MEMORANDUM OF DECISION – 24

law requires the trust deed to be executed in conformity with the statute.

Thus, the issue of such conformity does not necessarily arise until the

initiation of foreclosure proceedings, and thus Plaintiffs may correctly

challenge the DOT under these circumstances.

### Conclusion

Plaintiffs' motion for summary judgment on their claims that the

DOT is invalid for various reasons will be denied.   However, the Court

also denies Defendants' summary judgment motion, as the chain of

assignments concerning the DOT included in the record is inadequate,

and thus Defendants have not shown there is any proper legal basis for

their assertion of a secured claim in Plaintiffs' bankruptcy case.

A separate order will be entered in accordance with this decision,

along with an order scheduling this action for a trial.

Dated:  July 24, 2012

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 25